Parker, J.
George W. Hoffman filed his petition in the court of common pleas against Lottie A. Kiefer, and afterwards an amended petition- — and the question here is upon the amended petition — setting forth that she was the wife of one Charles Kiefer; that Charles Kiefer was deceased; that in his lifetime he became indebted to the plaintiff fox a certain amount stated in the petition, and that he had purchased certain real estate, paid for it with his own money and funds, but caused the same to be conveyed to his wife; and the plaintiff seeks to have a trust declared, i. e. holding - that the wife is trustee for the benefit of himself and all other of the creditors of the deceased. He also sets forth in the petition that in his lifetime Kiefer paid insurance premiums on life insurance in f'avor of his wife, and he ¡seeks to reach these insurance premiums, claiming that the payment thereof under the circumstances of Kiefer at that ■.time, was fraudulent as to creditors.
To this amended petition a demurrer was filed and sustained by the court below, and the plaintiff, not desiring to plead farther, a judgment was entered dismissing his petition, and upon that judgment he prosecutes error here. 'The ground of the holding of the court below, (as agreed 'by counsel), was that such an action might not be prosec¡uted by a creditor of the deceased; that to obtain a setting ¡aside of this conveyance, or to have this trust declared, or ¡to reach these premiums, an action, must be brought by an .administrator, under section 6139 of the Revised Statutes.
It is cle'ar that under that section an administrator may, -on behalf of the creditors, prosecute such an action, if it appears that without this property he would not have suffi-cient assets to discharge the indebtedness of the intestate — - in other words, that the estate is insolvent.
On behalf of defendant in error, it is insisted that that is 'an exclusive remedy; and that seems to have been the view of the court below. Counsel for defendant in error seem to rely chiefly upon two cases decided by our supreme court: one, being the case of Bustard v. Dabney, Adm’r et al., 4 Ohio Reports, 68. But we do not find that that case is at all in point. The action there was not to set aside a fraudulent conveyance; it was not for the purpose *403 of reaching asséts which were hidden, so that they might be administered for the benefit of creditors; but it was a bill in equity by a creditor to subject real estate the title to which was in the decedent at the time of his decease, which had descended to his heirs — so that there was no fraudulent conveyance, or any occasion for setting aside a conveyance or of having a trust declared. By the simple and ordinary process provided by the statute, this land could have been reached and sold and the proceeds administered by and through an administrator; and the court held, as we think very properly, that under such circumstances that course must be pursued, and that it i§ not permissible for a creditor, by a proceeding in equity in, effect to have the estate administered, taking the matter out of the hands of the administrator and out of the hands of the probate court. The other case is Davis v. Corwine et al. 25 Ohio St., 668, which was an action by heirs to recover specific personal property, or the value of it, and not to set aside any fraudulent conveyance; and we think the court very properly held that such an action could not be prosecuted in the name of or by the heirs; that the title to this personalty went to the representative of the deceased, for . the benefit of creditors first and the heirs afterwards.
Now, we find that this remedy through the administrator is under and by virtue of the statute. We have not traced this statute back any farther than 1840. Whether there was a statute in the state upon this subject, or giving this form of remedy, previous to that date, I am not prepared to say. Before the statute confered this authority upon the administrator, the only means of reaching such assets or property of the decedent was by an action by a •creditor or creditors — such an action as the plaintiff in error has undertaken to prosecute here. So that the question is not settled when we find that the remedy is given by the statute to the administrator; the question still remains: Is that the exclusive reme'dy? That the administrator could not have proceeded in this way, except by virtue of the statute conferring the power, is decided in Benjamin v. LeBaron’s Adm’r., 15 Ohio Rep. 517, and at page 526; in that decision there is a very plain intimation by the court that the creditor might sue. The right of the administra *404 tor to sue in that case was found not to exist, because the statute was not broad enough to reach the case. One of the arguments made, giving the reason why the administrator should be allowed to prosecute was, that unless it were permitted the creditor would be without remedy. The court says, it will be time enough to raise that question when it comes to it, but intimate very strongly that the remedy could be found by a creditor in a court of equity.
To the same effect is the case of McCall, Adm’r. v. Pixley, 48 Ohio St. 379, in the course of the decision of which the court says that the statute “advances” the remedy of the creditor. There is no intimation in any of these cases that the statute gives the exclusive remedy, or takes from the creditor the remedy theretofore existing, The law generally upon this subject is stated in Wait on Fraudulent Conveyances, at §§112, 113. I read a part of section 113:
“Ordinarily an executor or administrator will not be allowed to impeach the fraudulent conveyance of his testator or intestate. Like the heirs, he is bound by the acts of the deceased. ‘As a party to a fraudulent conveyance cannot allege its illegality, with a view to its avoidance, so neither can his heirs nor representatives, coming in as volunteers, and standing, as it were, in his shoes.’ Statutory changes, supported by the tendency of the courts to prevent the confusion incident to splitting up the administration of estates between creditors and personal representatives, have led to the general establishment of the practice of permitting and imposing the duty upon executors and administrators to sue for property fraudulently alienated' by the deceased in his lifetime. Thus, in New York, executors and administrators, who could not formerly impeach the conveyances of the deceased on the ground of fraud against creditors, are now enabled to do so by statute. This remedy,, however, is not exclusive.
“The personal representative may render himself individually liable to creditors for a failure to recover property fraudulently alienated by the testator or intestate, and he should include such property in the inventory, unless, of' course, he has no knowledge-of it. The personal representative, as he stands for the creditors when so acting,can only *405 attack fraudulent transfers in cases where the estate is insolvent, and with a view to recover a sum sufficient to satisfy the creditors. ”
This was distinctly held in the case of McCall v. Pixley, 48 Ohio St., 379.
The remedy of the administrator is not as broad or complete, or extensive as that of the creditor. The administrator is limited to proceeding to the extent that it is made necessary to attack these conveyances in order to satisfy the claims of creditors; whereas a creditor need not first exhaust assets tnat may be reached without this remedy, but he may proceed in the first instance to set aside a fraudulent conveyance and reach that particular property, and it would be no defense to an .action of that kind by a creditor to set forth that there was other property available without the aid of equity sufficient to discharge the indebtedness,
This is held in Westerman et al. v. Westerman, 25 Ohio St., 500. I resume reading from section 113 of Wait on Fraudulent Conveyances:
“The legislation clothing personal representatives with the power to appeal to the courts to° annul covinous alienations made by the deceased, is highly salutory in practice. The concurrent right of the creditor to seek redress is also of the utmost importance, for the personal representative is usually selected by, or is a near relative of, the deceased, and may, in some cases, be prompted by motives of friendship or self-interest to shield the parties who have depleted the estate; and, in some instances, is himself the fraudulent alienee. Where the personal representatives sue, a multiplicity of suits is prevented in cases where the creditors are numerous, and the necessity of judgment or execution is avoided, features important to the body of creditors.’’
.Tn this particular instance it will be observed that this alleged fraudulent transaction vests the title in the widow, who is first entitled to the administration of this estate. To the same* effect is page 630 of Warner’s American Law of Administration; and a case supporting this doctrine will be found in— Barbour,418. I read a single paragiaph from a case reported-in 101 U. S., at 645, This was an action in which a part of the relief sought was the setling aside of an alleged fraudulent conveyance. The action was brought by a *406 creditor. Justice Bradley, delivering the opinion of the court, at page 645, says:
“The point taken by the appellant, that the court below, sitting as a court of equity, had no jurisdiction of the case, is not well taken, The authorities are abundant and well settled that a creditor of a deceased person has a right to go into a court of equity for a discovery of assets and the payment of his debt, When there, he will not be turned back to a court of law to establish the validity of his claim. The court being in rightful possession of the cause for a discovery and account, will proceed to a final decree upon all the merits. ”
Citing Thompson v. Brown, 4 Johns. (N. Y.) Ch. 619; 1 Story Eq. Jur., section 546; 2 Wms. Exrs. 1718, 1719.
We are not without authority directly in point in our own state. In the case of Hampson’s Adm’r. v. Sumner, et al., 18 Ohio, 444, which was a suit similar in some phases to the case at bar, it is said, in the syllabus, that:
“Where an individual conveys property for the purpose of defrauding creditors, and dies, a court of equity may interpose at the suit of a creditor, to set aside the conveyance, especially if the fraudulent grantee had been appointed administrator of the estate.”
The whole tenor of the decision shows that it was not regarded as necessary to the exercise of the jurisdiction of a court of equity that the fraudulent grantee should have been granted the administration of the estate, but that is mentioned as one of the circumstances, as stated in Wait’s Fraudulent Conveyances, that would impel a court of equity to assume jurisdiction. This was an action to set aside a fraudulent conveyance or to have a trust declared in favor of creditors — which amounts to the same thing — and in the course of the opinion Hitchcock, J,, says, at page 447:
“We have had much difficulty, however, upon the question, whether this was a proper case for the interference of a court of chancery, The case made, is not such as would justify us in taking the settlement of the estate of Sumner from the probate' court. Possibly, the object which the complainants have in view, might all have been attained in the probate court. That court has power to compel an administrator to perform his duty. If he does not, he is li *407 able upon his bond. Besides, if an administrator, or an executor, misconducts, he may be removed, and another may be appointed in his place. But upon the whole, as in this case, there has been a fraudulent conveyance of property, and the administrator is the trustee constituted by that conveyance, and there might be doubt whether the court of probate would not be compelled, notwithstanding the conveyance of the devisee, to order the resale of the lot in Lancaster, we have concluded to take jurisdiction, and a decree, upon this branch of the case, may be entered for complainant.”
Another case to which our attention has been called is McDonald et al. v. Aten et al., 1 Ohio St., 293. This was an action brought by a creditor to reach property, the title to which had been fraudulently placed in another by the decedent in trust for himself.
On page 297, Judge Oorwin uses this language:
“The principal subjects of disagreement in this case are, as to tha jurisdiction of courts of chancery, in a case like the present; and, whether the proceeds of the sale shall go to the complainants alone, or to the general'creditors of the estate. We certainly do not admit the right of a creditor, by any proceeding, at his own option, to transfer the settlement of an estate from the probate court to a court of equity. But cases have arisen, and may arise again, when, from the peculiar relations of the administrator to the estate, or his connection with a title sought to be converted into assets, in the opinion of a majority of this court, the aid of a court of equity may be invoked by a creditor, not for a general settlement of the estate of which he is a creditor, but for the purpose of reaching and placing in the hands of the administrator assets which might otherwise not be reached But, this object accomplished, the court of equity will have performed its function, and leave the distribution of the assets thus obtained to the probate court. ”
And, without stopping to read from it, I cite the case of Matoon v. the Heirs etc., of Clapp, 8 Ohio, 248 — a case in which a like proceeding was entertained by the court with the approval of the supreme court. Now, whether section 6344 of the Revised Statutes applies or not, or how the court *408 shall be required to proceed after having found that this was a fraudulent conveyance (if it shall so find, and if it shall enter a decree for setting it aside), we are not called upon to determine now, but we think that the court may very well be guided by the language of Judge Corwin in the case which I have just cited — 1 Ohio St., 293 — that is to say: the court will not undertake to take the administration of the estate out of the hands of the probate court, or out of tlie hands of the administrator; but when these assets are r'eached, if they are reached, they will be placed in the hands of the administrator to administer according to law. We think that the court of common pleas erred in sustaining the demurrer to this amended petition; that the case should be entertained; that the creditor has a right to' proceed in this way; and the judgment of the court of common pleas will be reversed and the cause remanded with directions to that court to overrule the demurrer,
J. 8. Wertman and F. W. Sturdevant, for Plaintiff in Error.
Hamilton & Kirby, for Defendant in Error.